UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<table>
<tr><td>

MAY ZAKI,

     *Plaintiff*,


– against –


OTG MANAGEMENT LLC; OTG JFK T5
VENTURE, LLC; LAUNDRY,
DISTRIBUTION, AND FOOD SERVICE
JOINT BOARD; & WORKERS UNITED,

     *Defendants*.

</td><td>

**MEMORANDUM & ORDER**
23-cv-08189 (NCM) (PK)

</td></tr>
</table>

**NATASHA C. MERLE**, United States District Judge:

   This Court has received the Report and Recommendation ("R&R") dated June 24, 2025 from the Honorable Peggy Kuo, United States Magistrate Judge, recommending that the Court grant the motion to dismiss filed by defendants Laundry, Distribution and Food Service Joint Board and Workers United (collectively, "Union Defendants"). ECF No. 129. Plaintiff May Zaki timely objected to the R&R. Objection ("Obj."), ECF No. 135. For the reasons stated below, the Court overrules plaintiff's objections and adopts the R&R in its entirety.

## BACKGROUND

   Plaintiff sues her former employer, OTG JFK T5 Venture, LLC and OTG Management LLC (collectively "OTG"), as well as her former union, Union Defendants. Fourth Amended Complaint ("FAC"), ECF No. 107.

OTG employed plaintiff from August 2019 until April 2020, when she was laid off as a result of the COVID-19 pandemic. FAC 24.[1] She was rehired in July 2021. FAC 24. On February 21, 2022, OTG terminated her. FAC 28. On May 24, 2022, a friend advised Ms. Zaki to contact her union and file a grievance. FAC 29. Plaintiff accordingly consulted with her union representative, Stanford Dempster, about grieving her termination. FAC 29. Mr. Dempster assisted her with submitting a grievance to OTG, which OTG denied as untimely. FAC 29.

On October 30, 2023, plaintiff brought this action pro se against OTG, "its workers union," and Stanford Dempster, alleging discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). Compl. 1–4, ECF No. 1. Between January 5, 2024 and January 24, 2025, plaintiff amended her complaint four times, dropping some defendants, bringing in others, and adding related legal claims. *See* ECF No. 11 (first amended complaint); ECF No. 22-2 (second amended complaint, as construed by Order dated Feb. 14, 2024); ECF No. 37 (third amended complaint, as construed by Order dated March 8, 2024); FAC. As of the Fourth Amended Complaint, plaintiff alleges claims of discrimination, harassment, and retaliation against OTG and a claim for breach of the duty of fair representation ("DFR") against Union Defendants. *See* FAC.

On December 13, 2024, Union Defendants filed a motion to dismiss the DFR claim. *See* Motion to Dismiss ("Mot."), ECF No. 92. Plaintiff filed an opposition ("Opp'n"), ECF No. 97, and Union Defendants filed a Reply ("Reply"), ECF No. 106. By R&R, Magistrate

---

[1]    Throughout this Order, page numbers for docket filings refer to the page numbers in ECF filing headers.

Judge Kuo recommended that the Court grant the motion. *See* R&R 1. Plaintiff timely filed objections. *See* Obj.

## STANDARD OF REVIEW

A district judge reviewing a report and recommendation on a dispositive matter "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Portions of a report and recommendation that have not been properly objected to, on the other hand, are reviewed for "clear error on the face of the record." *Park v. Kim*, No. 20-cv-02636, 2022 WL 3643966, at *2 (E.D.N.Y. Aug. 24, 2022), *aff'd*, 91 F.4th 610 (2d Cir. 2024).[2] "General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge" are not proper objections and thus "are reviewed for clear error." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 494 (E.D.N.Y. 2019). Moreover, "objections must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *N.Y.C. Dist. Council of Carpenters v. Allied Design & Constr., LLC*, 335 F. Supp. 3d 349, 351 (E.D.N.Y. 2018). District judges "will not consider new arguments raised in objections . . . that could have been raised before the magistrate but were not." *Id.*

Submissions by pro se parties must be "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). Such documents are read "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). However, "even a pro se party's objections to [an R&R] must be specific and clearly aimed at particular findings in the magistrate's proposal." *Pizarro v.*

---

[2]     Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

*Gomprecht*, No. 10-cv-04802, 2013 WL 990997, at *2 (E.D.N.Y. Mar. 13, 2013).

Plaintiff raises thirteen objections to Judge Kuo's R&R: (1) that Mr. Dempster ceased communicating with plaintiff on August 1, 2022 rather than in May 2022; (2) that the parties did not conduct discovery related to the union's conduct; (3) that "[t]he bad faith and evasiveness in communications are clear"; (4) that OTG Human Resources employee Starr Ernest gave inconsistent reasons for plaintiff's termination; (5) that the union should have examined whether other employees engaged in conduct similar to the conduct for which plaintiff was terminated yet were treated differently by OTG; (6) that OTG uses policies or practices related to the voiding of items to retaliate against employees; (7) that the lack of a formal termination letter suggests that plaintiff's termination was pretextual; (8) that Union Defendants' claim that plaintiff was given a copy of the collective bargaining agreement ("CBA") did not mean that she had it in her possession, and moreover, that Union Defendants did not follow the CBA; (9) that Mr. Dempster had no knowledge of plaintiff's case until speaking with Ms. Ernest; (10) that Mr. Dempster later claimed that he had been "notified" yet did not follow the CBA; (11) that the union evaded service and then engaged in further litigation delays, which cut into the statute of limitations; (12) that the union was not fully informed about plaintiff's case; and (13) that the R&R issued on June 24, 2024 differs from the R&R issued on October 23, 2024.

With one exception, the Court will review plaintiff's objections for clear error. Objections 1, 2, 4, 6, 7, 8, and 9 are new arguments that could have been raised to Judge Kuo but were not. District judges generally do not consider such arguments, *Pizarro*, 2013 WL 990997, at *2, but because plaintiff is litigating this case pro se, the Court will examine whether any of these objections identify a clear error with the R&R. Objections 3

and 13 are "[g]eneral or conclusory objections" and thus entitled only to clear error review. *Sosa*, 368 F. Supp. 3d at 494. Objections 5, 10, and 12 renew arguments already rejected by Judge Kuo and are likewise entitled only to clear error review. *Id.* Objection 11 was to some degree raised by plaintiff in her opposition to Union Defendants' motion, *see* Opp'n 2–3, but not specifically addressed in the R&R. Accordingly, the Court will give this objection de novo consideration. The remainder of the R&R has not been properly objected to and is reviewed for clear error only. *Park*, 2022 WL 3643966, at *2.

## DISCUSSION

Judge Kuo recommended that plaintiff's claim against Union Defendants be dismissed because: (1) the statute of limitations for a DFR claim is six months, yet plaintiff filed her complaint seventeen months after she had reason to know of Union Defendants' purported DFR breach; (2) plaintiff has not shown the presence of "extraordinary circumstances" that might justify equitable tolling of the statute of limitations; (3) plaintiff's complaint offers nothing beyond conclusory allegations to support the notion that Mr. Dempster, acting on behalf of Union Defendants, engaged in conduct that was "arbitrary, discriminatory, or in bad faith," which is a required element for any DFR claim; and (4) plaintiff's complaint provides no non-conclusory allegations that any breach of the CBA by Union Defendants—if such a breach even occurred—was "motivated by discriminatory animus." *See generally* R&R. Judge Kuo also recommended that the claim be dismissed with prejudice. R&R 10. She reasoned that plaintiffs generally should not be given the opportunity to replead time-barred claims. R&R 10. She also noted that after failing through four successive complaints to plead facts sufficient to establish a DFR claim, plaintiff should not receive a fifth chance.

As discussed below, the Court has reviewed the R&R and each of plaintiff's objections other than objection 11 and has identified no clear error. With respect to objection 11, the Court reviewed the objection de novo and finds it unmeritorious.

## I.    Timeliness of Plaintiff's DFR Claim.

### A.    *Plaintiff Sued After the Statute of Limitations Expired.*

Judge Kuo concluded correctly that plaintiff's DFR claim is time-barred. "An employee has six months to assert a claim against [her] union for breach of the collective bargaining agreement or breach of the duty of fair representation." *Haygood v. Loc. 1181-1061, Amalgamated Transit Union, AFL-CIO*, No. 14-cv-03998, 2016 WL 1255728, at *4 (E.D.N.Y. Mar. 29, 2016). A DFR claim "accrues no later than the time when plaintiff[] knew or reasonably should have known" that a breach occurred. *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995). Neither plaintiff's complaint nor her opposition to Union Defendants' motion to dismiss allege when precisely she became aware of the union's purported DFR breach. Plaintiff's complaint states that on May 24, 2022, a friend encouraged her to contact her union and file a grievance. FAC 29. The complaint also alleges that either that day or at some point after, plaintiff spoke with Mr. Dempster and with his assistance submitted a grievance to OTG's Human Resources department that OTG denied as untimely. FAC 29. Plaintiff's opposition states that "[a]fter Dempster contacted HR . . . he started to ignore my text messages and emails and rejected my phone calls." Opp'n 2. The opposition also alleges that "[a]s of May 24, 2022, Mr. Dempster became [aware] of everything when I contacted him . . . regarding the grievance and the unusual termination . . . . He [has] chosen [to] do nothing and refused to communicate with me." Opp'n 3. Without a clear allegation of the precise date that Mr. Dempster ceased assisting plaintiff, Judge Kuo reasonably construed plaintiff's opposition to indicate that

plaintiff had knowledge of the purported DFR breach on May 24, 2022. R&R 5–6 (citing Opp'n 3). Because plaintiff did not sue until October 30, 2023, seventeen months later, Judge Kuo made no error in finding that plaintiff commenced her suit after the six-month statute of limitations expired.

Plaintiff objects to the R&R on the basis that Mr. Dempster actually stopped communicating with her on August 1, 2022 rather than in May 2022. Even if that is true— and even assuming it took several additional days or weeks of non-responsiveness by Mr. Dempster for plaintiff to apprehend that the union would be taking no further action—those additional three to four months do not save plaintiff's claim from being time-barred. Because plaintiff filed her complaint more than a year after any plausible date that the DFR claim might have accrued, Judge Kuo made no error in finding that the claim must be dismissed.

### B.    *Plaintiff Alleged No Basis for Equitable Tolling.*

Judge Kuo considered sua sponte whether equitable tolling of the limitations period might be warranted. Equitable tolling requires that plaintiff show that "extraordinary circumstances prevented [her] from filing [her] petition on time" and that she "acted with reasonable diligence throughout the period [she] seeks to toll." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). Plaintiff bears the burden of demonstrating her diligence. *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 335 (E.D.N.Y. 2012). Courts apply equitable tolling only in "rare and exceptional circumstances." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005).

Judge Kuo made no error in finding that plaintiff does not qualify for equitable tolling. The R&R identified circumstances that could have delayed plaintiff's complaint, including the death of plaintiff's father, consulting with attorneys, and filing an EEOC

complaint. R&R 6 (citing Opp'n 1–2). Nevertheless, Judge Kuo reasonably found that these do not constitute "extraordinary circumstances" justifying a substantial delay beyond the limitations period. R&R 6. Judge Kuo also made no error in concluding that plaintiff did not demonstrate "reasonable diligence" throughout the period of delay. R&R 6. Accordingly, the Court finds no clear error in Judge Kuo's conclusion that plaintiff has no basis for equitable tolling.

## II.    Merits of Plaintiff's DFR Claim.

Even though Judge Kuo found that plaintiff's DFR claim was time-barred, Judge Kuo nevertheless examined the claim on the merits. R&R 6–7. The Court finds no clear error in Judge Kuo's conclusion that plaintiff has not plausibly alleged a violation of the DFR.

Labor unions, when serving as the exclusive representative of employees in a bargaining unit, have "a duty . . . to represent all members fairly." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998). This duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

To state a DFR claim, a plaintiff must plausibly allege two elements: (1) that the union acted in a manner that is "arbitrary, discriminatory, or in bad faith;" and (2) that there is "a causal connection between the union's wrongful conduct and [the plaintiff's] injuries." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010). A union's actions are "arbitrary" only if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67

(1991). A union's actions are "discriminatory" only if the conduct is "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). Finally, a union's actions constitute "bad faith" only if the plaintiff can show "fraudulent, deceitful, or dishonest action.'" *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001). Importantly, "[n]either conclusory allegations nor 'mere negligence' by the union in its enforcement of a [CBA] is sufficient to state a claim.*" Xie v. N.Y.C. Dep't of Educ.*, No. 19-cv-04097, 2020 WL 32462, at *4 (E.D.N.Y. Jan. 2, 2020) (citing *Mancus v. Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002)).

The actions and omissions that plaintiff argues constitute a DFR violation include: (1) that after Mr. Dempster filed a grievance of plaintiff's termination and the grievance was denied, Mr. Dempster ceased communicating with plaintiff and did not take any further actions to assist her; (2) Mr. Dempster failed to ensure that OTG provided a copy of all documentation related to plaintiff's termination; (3) Mr. Dempster did not himself provide plaintiff with information concerning her termination; (4) Mr. Dempster did not review similarly situated cases from the last 5 years; (5) the union has a "conflict of interest" because the union "is almost an in-house union" whose "primary role is to prevent strikes beside[s providing] some marginal benefits"; and (6) legal counsel for Union Defendants did not review the facts of plaintiff's case before the termination decision occurred. Opp'n 1–3.

The Court concurs with Judge Kuo that none of plaintiff's allegations make out a plausible claim for a violation of the DFR. Plaintiff has not articulated why any of the purported actions or inactions of Union Defendants were "so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n*, 499 U.S. at 67. Plaintiff has

likewise not shown that any of the purported actions or inactions were "discriminatory" because she has made no factual allegations that the actions were "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated*, 403 U.S. at 301. And plaintiff has not shown that any of the purported actions or inactions were "fraudulent, deceitful, or dishonest." *White*, 237 F.3d at 179. Accordingly, Judge Kuo did not err in finding that plaintiff failed to plausibly allege that Union Defendants breached the DFR. *See* R&R 8.

Judge Kuo interpreted the FAC to also raise a second theory of liability: that Union Defendants failed to follow the CBA, including the CBA's "rules," "regulations," and "steps." FAC 3; R&R 9 (citing Opp'n 2). The purported violations of the CBA include transgressions of Article 24, which prohibits the union from engaging in discriminatory practices. FAC 4. Plaintiff alleges that these departures from the CBA constituted a "breach of contract and failure of representation." FAC 4.

Judge Kuo made no error in rejecting plaintiff's arguments based on purported violations of the CBA. Claims that a union injured a bargaining unit member by failing to follow the collective bargaining agreement are analyzed under a DFR standard. *Vaughn*, 604 F.3d at 709. For the most part, plaintiff's allegations that Union Defendants violated the CBA are too speculative, conclusory, or undefined to state a claim for violation of the DFR. *See Xie*, 2020 WL 32462, at *4–5. Plaintiff's reference to Article 24 of the CBA is somewhat more specific, but it still fails to plausibly allege a DFR claim. Plaintiff has not explained how Union Defendants engaged in "discriminatory" conduct that was "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated*, 403 U.S. at 301. Moreover, plaintiff has not plausibly alleged that the purported violations of Article 24 were arbitrary or in bad faith. Accordingly, Judge Kuo did not err in finding

that plaintiff failed to state a claim that Union Defendants' purported departures from the CBA constituted a breach of the DFR. *See* R&R 9.

### III.  Leave to Amend.

The Court finds no error in Judge Kuo's recommendation that plaintiff's claim be dismissed with prejudice. Dismissal with prejudice is warranted where, like here, "a cause of action falls outside the applicable statute of limitations." *Brandon v. Musoff*, No. 10-cv-09017, 2012 WL 135592, at *4 (S.D.N.Y. Jan. 17, 2012). At this stage, the Court believes plaintiff could not plead any plausible set of facts that would establish that plaintiff did not have notice of Union Defendants' purported DFR breach until after April 30, 2023 (six months prior to the filing of the complaint).

### IV.  Plaintiff's Objections to Judge Kuo's R&R.

Plaintiff raises thirteen objections to Judge Kuo's R&R. The Court previously addressed plaintiff's first objection. *See supra* at 7. The Court now considers plaintiff's remaining twelve objections, reviewing one of her objections de novo and the remainder for clear error. *See supra* at 4–5.

#### A.  The Parties Did Not Conduct Discovery on the Union's Conduct.

Plaintiff second objection is that the parties "did not conduct discovery related to [the] union." Obj. 1. The Court notes that on May 1, 2024, Judge Kuo issued a scheduling order setting deadlines for discovery. *See* ECF No. 47. Plaintiff was entitled to seek discovery from Union Defendants. If plaintiff did not conduct discovery related to the union, that was entirely within plaintiff's control. In any event, given that Union Defendants' motion to dismiss is based on the inadequate allegations in plaintiff's complaint, the absence of discovery does not warrant denial of the motion. *Donell v. Fid. Nat'l Title Agency, Inc.*, No. 07-cv-00001, 2009 WL 10692729, at *2 (D. Nev. Jan. 26,

2009); *see also Greer v. Fox Corp.*, No. 20-cv-05484, 2022 WL 4093155, at *6 (S.D.N.Y. Sept. 7, 2022), *aff'd sub nom. Greer v. Fox News Media*, No. 22-1970-cv, 2023 WL 2671796 (2d Cir. Mar. 29, 2023).

### B.    It is "Clear" that the Union Engaged in Bad Faith and Evasiveness.

Plaintiff's third objection is that "[t]he bad faith and evasiveness in communications are clear." Obj. 1. Read charitably, this objection asserts that Mr. Dempster's failure to respond to plaintiff after her grievance was denied constituted "bad faith" in violation of the duty of fair representation. Plaintiff's allegations, however, are not sufficient to state a claim. The Court has already discussed how plaintiff's allegations are not sufficient to show that Union Defendants engaged in actions in "bad faith." *See supra* at 9–10. Plaintiff's renewed assertion that "[t]he bad faith and evasiveness in communications are clear," Obj. 1, is precisely the type of "mere conclusory statement[]" that does not move the needle when opposing a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### C.    OTG Offered Conflicting Reasons for Plaintiff's Termination.

Plaintiff's fourth objection is that when OTG human resources representative Starr Ernest was deposed, Ms. Ernest said the reason for plaintiff's termination was "performance," which was different from the reason given by Ms. Ernest on another occasion. Obj 1. Plaintiff may be arguing that the offered "performance" rationale is inconsistent with plaintiff's allegation that "Starr terminated me over the phone" because "[s]he said I didn't notify the kitchen to delete the ribeye." Opp'n 1. Even assuming Ms. Ernest gave a different rationale at the time of the termination than Ms. Ernest gave during her deposition, plaintiff has not explained how this inconsistent testimony by a

human resources representative of OTG would show that Union Defendants acted in a way that was arbitrary, discriminatory, or in bad faith.

    D. *The Union Did Not Research How OTG Handled Comparable Cases.*

   Plaintiff's fifth objection is that Union Defendants should have examined whether other OTG employees who engaged in similar practices as plaintiff with respect to the voiding of items were treated differently (for example, not discharged). Obj. 1. Without more, this bare allegation is not sufficient to defeat a motion to dismiss. Plaintiff has not provided any specific reason to believe that Union Defendants did not, in fact, look for comparable instances of misconduct. Moreover, even assuming that Union Defendants did not, plaintiff has not explained why the union's failure to do so was arbitrary, discriminatory, or in bad faith as opposed to, for example, "mere negligence." *See Martin v. N.Y. State Dep't of Corr. Servs.*, 224 F. Supp. 2d 434, 456 (N.D.N.Y. 2002) ("Mere negligence does not amount to a breach of the duty of fair representation.")

    E. *OTG Uses Policies or Practices Related to the Voiding of Items to Retaliate Against Employees.*

   Plaintiff's sixth objection states: "Why the employer kept this 'voiding' . . . process open, and use if they want to retaliate." Obj. 1. Plaintiff appears to be taking issue with OTG's practices or policies related to the voiding of items and seems to assert that OTG uses these policies or practices to engage in retaliation. As with several of plaintiff's objections, plaintiff has not articulated how this allegation—even if true—would show that Union Defendants acted in a way that was arbitrary, discriminatory, or in bad faith.

    F. *The Lack of a Formal Termination Letter Suggests that Plaintiff's Termination Was Pretextual.*

   Plaintiff's seventh objection is that if OTG and Union Defendants genuinely believed the proffered reason for plaintiff's termination, plaintiff would have received a

formal termination letter explaining the basis of her discharge. Obj. 2. The Court is not persuaded—at least without more than a conclusory assertion—that the fact that plaintiff did not receive a formal termination letter suggests that the termination was pretextual. Plaintiff has not alleged, for example, that a formal termination letter is typically provided or what information is usually included in the letter such that its absence indicates pretext.

Moreover, even if the absence of a letter could be viewed as evidence of a pretextual termination, it was OTG that terminated plaintiff—not the union. Plaintiff's objection could be construed as an allegation that Union Defendants breached the DFR by failing to ensure that plaintiff received a termination letter. But the Court already found no clear error in Judge Kuo's conclusion that plaintiff failed to articulate a plausible breach of the DFR stemming from the union's actions with respect to documents concerning plaintiff's termination. *See supra* at 9–10.

> G.    *The Union Cannot Be Credited with Plaintiff Having a Copy of the CBA, and Moreover, Union Defendants Did Not Follow the CBA.*

Plaintiff's eighth objection consists of two components. The first is that "[t]he union's claim that I was 'given' a copy of the CBA does not mean I had it in my possession at home." Obj. 2. Even if plaintiff did not have a copy of the CBA in her possession, that allegation does not indicate that Union Defendants took any actions that were arbitrary, discriminatory, or in bad faith. To be sure, federal law requires that labor unions provide a copy of a CBA to any employee affected by that CBA upon the employee's request. *See* 29 U.S.C. § 414. But plaintiff's objection is not that Union Defendants failed to furnish her with a CBA upon her request. Rather, the objection appears only to note that she did not still have a copy of the CBA at the time of her termination. Plaintiff has not explained how this is material to her contention that Union Defendants breached the DFR.

14

The second component of plaintiff's eighth objection is that Union Defendants "fail[ed] to apply [the CBA's] terms correctly." Obj. 2. Judge Kuo already considered and rejected this argument as a basis for plaintiff's claim to survive a Rule 12(b)(6) motion. R&R 9. The Court found no clear error in this conclusion. *See supra* at 10–11.

## H. *Dempster was Uninformed Until Speaking with Ernest*.

Plaintiff's ninth objection alleges that Mr. Dempster initially had no knowledge of plaintiff's case and only became informed about it after speaking with Ms. Ernest from OTG. Obj. 2. Nothing about this seems unusual, and plaintiff does not allege that Mr. Dempster had reason to know beforehand. A union representative can learn about things that occur between employers and employees only if the representative witnesses the occurrence first-hand or learns about it via someone else. The fact that Mr. Dempster did not know anything about plaintiff's termination until speaking with an employee in OTG's Human Resources department does not, itself, constitute an action or omission that was arbitrary, discriminatory, or in bad faith.

## I. *Dempster Did Not Follow the CBA's Procedures*.

Plaintiff's tenth objection states: "Later, in his text messages, Mr. Dempster stated that he had been 'notified.' If that is true, why did he not follow the procedures outlined in the Collective Bargaining Agreement." Obj. 2. Again, the Court previously found plaintiff's bare assertions that Union Defendants did not follow the CBA to be an insufficient basis to support a DFR claim. *See supra* at 10–11.

## J. *Union Defendants Cut the Statute of Limitations by Evading Service*.

Plaintiff's eleventh objection is that Union Defendants engaged in deliberate conduct to evade service and cause litigation delays, which reduced the statute of limitations for plaintiff's DFR claim. Obj. 2. Plaintiff raised this argument in her opposition

to the motion to dismiss, *see* Opp'n 2–3, and the R&R did not specifically address it. The Court accordingly reviews the objection de novo. The objection, however, is without merit. Even if Union Defendants had deliberately evaded service, plaintiff is mistaken that such conduct would in any way affect the statute of limitations. The statute of limitations for a DFR claim stops when the complaint is filed, not when the complaint is served or when pretrial motions are resolved. *West v. Conrail*, 481 U.S. 35, 37–39 (1987). None of Union Defendants' conduct after October 30, 2023—the date plaintiff filed the complaint—could have affected the statute of limitations for plaintiff's claim.

### K.   *Union Defendants Should Have Been Better Informed.*

Plaintiff's twelfth objection, construed charitably, is that Union Defendants breached the DFR by not being sufficiently informed about plaintiff's case. Obj. 2. This objection is unavailing for at least two reasons. First, plaintiff has failed to provide more than conclusory assertions that Union Defendants were in fact not fully informed about her case. Second, even if plaintiff had demonstrated persuasively that the union was not fully informed, plaintiff has not established that this lack of knowledge constituted conduct that was arbitrary, discriminatory, or in bad faith (as opposed to, for example, merely negligent). *See Martin*, 200 F.3d at 1221.

### L.   *The June 24, 2025 R&R differs from the Oct. 23, 2024 R&R.*

Plaintiff's final objection is that the R&R issued on October 23, 2024 regarding plaintiff's motion to amend her third complaint, ECF No. 87, is different from the R&R issued on June 24, 2025 regarding Union Defendants' motion to dismiss, ECF No. 129; *see* Obj. 2. The Court sees no cognizable objection, as to granting Union Defendants' motion to dismiss, in plaintiff's observation that these two R&Rs are different from one another.

16

## CONCLUSION

For the reasons stated above, the R&R is adopted, in its entirety, and Union Defendants' motion to dismiss plaintiff's complaint insofar as it raises claims against Union Defendants is **GRANTED** without leave to amend.


**SO ORDERED.**

_/s/ Natasha C. Merle_____
NATASHA C. MERLE
United States District Judge


Dated:      September 15, 2025
            Brooklyn, New York